EuRFirr, J.
 

 Assuming that a parol gift of slaves may be made in Virginia, and that such a gift may be presumed there, when a parent, on the marriage of his daughter, delivered to her husband slaves, which he carries home and keeps, yet that presumption is conclusively rebutted in this case by the papers which the parties executed on the 23d of October, 1848, bv which it is declared that the defendant held the ne-groes as a bailee by loan. Indeed, the parties acted on that idea in all the subsequent transactions between them, and in no part of them more than in the execution of the instrument of the 14th of November, 1854, which the defendant insists upon as a conveyance from the plaintiff to him. It was argued, however, for the defendant, that the giving up the instruments declaring the loan, destroyed their operation, and left the case as if they had never existed. But that cannot be, for, the fact that it -was, at first, a lending cannot cease to exist, and the utmost the surrender can imply is, that there might have then been a gift. But to such an implication there are insuperable obstacles in other circumstances. In the first, such a new gift must gave been made either in Virginia or North Carolina, and it appears that in neither could a valid gift have been executed. The slaves were in North Carolina all the time, according to the testimony, and a con-" veyanee of them was to operate on them in this State, and, therefore, according to the general principle, should be in conformity to the law of North Carolina, the
 
 lex situs,
 
 which could only be by writing. But supposing that otherwise, and that by a parol gift in Virginia the title might have passed, yet no such gift can be found upon any facts stated in this case; because there was no delivery, which is essential to a valid oral gift of a personal chattel at common law. Simply,
 
 *254
 
 words of gift, without an actual transmutation of possession, will not answer.
 
 Adams
 
 v.
 
 Hayes,
 
 2 Ired. Rep., 361. And there could have been no such transfer of possession, as the defendant already had the possession of the slaves in North Carolina. The declarations of the plaintiff to A. G-. Boyd, that he had given the negroes to the defendant, and “had made him a good title to them, as he thought,” are not, for those reasons, sufficient to establish such a gift; and, besides, they obviously refer to the writings of November, 1854. The same observations apply to the testimony of the other witnesses. So the instruction that a parol gift could not be inferred from the evidence, appears to the Coui’t to be correct.
 

 The question, then, is upon the instrument of November, 1854. A point was made at the bar, that, although it might not be a good deed in Virginia, by reason that the body of the writing did notrecognize the scroll as the seal of the maker, yet it might be a good deed here, where it was to have its effect. In the view taken of the construction of the instrument, it is not necessary to discuss that point; for, after much research and consideration, the Court is obliged to hold, that, supposing it to be under seal, it is not a conveyance, but a covenant. It is not easy, at all times, to give a character in that respect to all instruments, and it is frequently determined upon the supposed intention of the parties or the convenience of the one construction or the other. Thus, a covenant, in point of form, not to sue an obligor in a bond, where he is the solo obligor, is held to be a release. But that is evidently not on the words of the instrument, but upon the end in view, and to "avoid circuity of action, and thus give to the instrument its most beneficial operation as to both parties ; for, a similar contract with one of two obligors is held not to be a release, but a mere covenant, since the release of one would be the release of both, which was not intended. So, in respect to leases, many questions of the sort have arisen. And as a lease is but a contract for the possession of land and the possession of one who enters under another, ought to be sustained as a subsisting estate, if possible, the court leans, in cases of that kind,
 
 *255
 
 to treat the instruments between 'the parties as vesting an estate and not as articles merely. Hence, when the word “grant,” or “hold,” or “have,” or the like are used, the agreements have been supported as leases ; and if there be a subsequent clause for the future execution of a formal lease, it will not change the character of the instrument, but the added clause is considered an engagement for further assurance, or to provide for a duly settled lease with the usual covenants for payment of rent, for repairs, and against waste, and the like. The Court would gladly apply that principle to this instrument, if there were words in any part of it to support it. But there are no terms in it purporting to-pass a present interest, so as to found an argument, that the latter clause binding the plaintiff to execute afterwards such a paper as would secure a good title to the defendant according to the law of the State, is birt an agreement for further assurance. For, in the beginning, the instrument does not profess to surrender, then, the title to the defendant, but the plaintiff agrees only to “surrender” the title, and to show more’distinctly the nature of the instrument, the plaintiff “ binds ” himself to make the surrender. From this language it can only be inferred, whatever the future purpose of the plaintiff then was as to a benefaction to the defendant, that he did not, in that instrument convey the slaves, but only contracted to do so. There is nothing in the nature of the transaction to enable the Court to interpret the instrument, by any aid but its own language, and taking that throughout, it seems to the Court to be but an executory agreement.
 

 Pee. Cceiam, Judgment affirmed.